**UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY, Appellant,**

v.

**BIMCO IRON & METAL CORPORATION,
Appellee.**

No. 15632.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 4, 1970.

Rehearing Denied July 9, 1970.

Fulbright, Crooker, Freeman, Bates & Jaworski, Tom Connally, Houston, for appellant.

Finger & Burg, Leonard Z. Finger, Houston, for appellee.

COLEMAN, Justice.

This is a suit on an insurance policy to recover the loss to an insured building caused by a burglar. The principal issues relate to the proper interpretation of a malicious mischief rider to the insurance policy, and to whether the insurance company waived a written proof of loss. Judgment for the insured was rendered on a jury verdict.

The loss on which this suit is based occurred sometime during the weekend of July 10–13, 1966, when some unidentified persons broke into appellee's warehouse, damaging the building in gaining entry, and removing all copper wiring. In the process of stripping the building of its wiring a transformer, and other electrical apparatus were removed or rendered valueless. Certain other items of property were taken from the building. It was stipulated that the wiring and electrical apparatus which were damaged or removed constituted part of the building, and that the damage to the building was caused by burglars.

In connection with its purchase of the building appellee secured an insurance policy from appellant by which it insured appellee against direct loss by certain perils, including fire and lightning, and by reason of vandalism and malicious mischief. The

vandalism and malicious mischief endorsement included insurance against loss caused by damage to the insured building "caused by burglars".

While the burglary was immediately reported to the police, the loss was not reported to the insurance company. Mr. Blanc, the owner of Bimco Iron & Metal Corporation, testified that he purchased the insurance through a broker, Mr. Hecht. After the burglary he could not find his policy. About two weeks later he decided that Mr. Hecht had the policy and confirmed that fact by telephone. About two weeks later he reported the loss to the Fannin Insurance Agency. He made no written note of the date and was depending solely on his memory, but he was certain that the report was made within the 91 day period prescribed by the policy. His testimony was impeached somewhat by his previous testimony by deposition.

Mr. LaFonte, the owner of the Fannin Agency, directly contradicted this testimony, stating that he noted the time of all his calls, and that Mr. Blanc called him on December 6, 1966. He said that he immediately referred the matter to the General Adjustment Bureau by telephone, and confirmed the call by letter. He also wrote a letter on the same date to appellant, in which he advised them of the claim; that it was delayed; and requested that it be processed. He also stated that he had denied the major part of the claim as being due to theft.

The testimony of Mr. LaFonte was corroborated by evidence of the letters written and of the date the matter was reported to General Adjustment Bureau. Essentially, however, the effect of his testimony depended on his unsupported testimony that his first notice of the loss was a telephone conversation on December 6, 1966. This was controverted by the testimony of Mr. Blanc that a young lady at Fannin Insurance Agency called him about the loss about four weeks after the loss. The jury found

that notice was given within 91 days of the loss. This finding is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellee never filed a sworn written proof of loss. Mr. Blanc testified that when he talked to Mr. LaFonte, he was told that he was late in reporting the loss, but that the delay would be waived. He testified that Mr. Wilson, a representative of General Adjustment Bureau, came to see him several times, the first time being several days after he had talked with Mr. LaFonte. Before Mr. Wilson began his investigation he required Mr. Blanc to sign a non-waiver agreement. At the request of Mr. Wilson he had the loss appraised by three electrical contractors. He made a comprehensive statement to Mr. Wilson concerning the loss, the amount of the damage, and the merchandise that was stolen, the reason for the late report, and the approximate date of the report. The statement was written up and later corrected by Mr. Blanc. It was dated December 8, 1966.

In connection with a Bill of Exceptions Mr. Wilson testified that the Company had denied liability from the beginning for damage occasioned by the taking of the electrical system out of the building. He also testified on the Bill that on January 16, 1967, he told appellee's attorney that the Company would not pay the loss from the theft, but would pay for the door and "whatever incidental damage was done to the building from the breaking."

Appellant was requested to admit the truth of this statement:

"After the Defendant, United States Fidelity & Guaranty Company, was notified of the loss that occurred at the insured premises on or about July 10, 1966, the Defendant asserted to Plaintiff that the damage to the door caused by the burglars or vandals was covered by the policy but that the loss resulting from the removal of the copper wiring and the

circuit boxes from the wiring system of the building was not covered by the policy."

The answer was offered, both on the Bill of Exceptions and before the jury. The answer does not appear in the record. However, the attorney for appellant, when the request was read out of the presence of the jury, stated: "Your Honor, I think that is certainly what happened. I take the position right now that that is exactly what the policy says, that the door of the building is covered and that the wiring is not covered * * *"

There is evidence that the Company took the position that part of the claim was within the coverage of the policy, but that the major portion of the loss was not within the coverage. It is not established when this position was first communicated to appellee, but it could be inferred that it was made known to appellee by Mr. Wilson. It is established by testimony on the Bill of Exceptions that there was a denial of liability for the loss occasioned by the theft, and an admission of coverage and offer to pay for the incidental damage to the building caused by the entry prior to the date the suit was filed. There is no evidence that liability was denied on the ground that proofs of loss were not filed in proper time before this suit was filed. There is evidence that Mr. LaFonte denied liability for the major portion of the claim on or prior to December 6, 1966, since this fact was mentioned in his letter of that date to appellant. The denial was based on the contention that the loss was caused by theft not covered by the policy. There is no evidence that the denial of liability occurred within the period allowed for filing the proof of loss. Mr. Blanc testified that "he thought at all times that there would be no question in their mind that they would go ahead and get the building back into its original shape."

Mr. Blanc testified on a bill of exceptions that the adjuster told him that the Company would not pay for the wiring because it was stolen, but that it would pay for the damage to the door. He testified that at first he was "led to believe that everything would be taken care of." He also testified on the bill that Mr. Wilson told him that the Company would pay for "some of the damages".

█ The testimony admitted into evidence for consideration by the jury did not raise an issue of fact that appellant waived the filing of a proof of loss. The denial of liability after the time allowed for filing the proof of loss did not constitute a waiver of such filing. Galveston County v. Hartford Fire Ins. Co., 231 S.W.2d 684 (Tex. Civ.App.—Galv.1950, writ ref.).

Mr. LaFonte, as a local recording agent, had no authority to handle claims in excess of $100.00, other than to refer them to an adjuster, and was not authorized to waive any of the conditions in the policy. Aetna Ins. Co. v. Durbin, 417 S.W.2d 485 (Tex.Civ.App.—Dallas 1967).

█ The testimony introduced on the Bill of Exceptions cannot be considered in determining the sufficiency of the evidence to support the answers made by the jury to the issues submitted. Appellee complains, by cross-point, that the trial court erred in refusing to admit certain testimony on the issue of waiver. The trial court refused to admit the testimony on the ground that it related to facts occurring after the nonwaiver agreement had been executed. Mr. Wilson was employed by the Company to adjust this particular loss. He was authorized to waive notice and formal proofs of loss. Employers Mutual Cas. Co. of Des Moines, Iowa v. Nelson, Tex.Civ. App., 351 S.W.2d 278, rev'd on other grounds 361 S.W.2d 704 (Tex.1962).

█ An admission of partial liability on a claim after the expiration of the time for the filing of proofs of loss is inconsistent with an intention to rely on the failure to file as a defense. Here the local recording agent wrote the Company requesting that the claim be processed despite the fact that the time for filing the formal

proof of loss had expired. He was authorized to, and did, refer the claim to the General Adjustment Bureau. He received no answer in response to his letter. The adjuster proceeded to process the claim and offered to make a payment under the policy. The statement which appellee made to the adjuster contained most of the information needed to complete the formal proof of loss.

The non-waiver agreement executed by appellee is not as comprehensive as that considered by the court in Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Company, Inc., 416 S.W.2d 396 (Tex.1967). In the Orkin case the agreement provided that "No action heretofore or hereafter taken" by the insurance company should be construed as a waiver of the right of the Company to deny liability on the claim asserted. The non-waiver agreement relied on by appellant provides that " * * * Any action taken by the Company * * * in investigating said accident, shall not operate in any way as a waiver. * * *" This agreement deals only with action taken which might reasonably be considered part of the investigation of the claim, and the actions or statement of the adjuster in attempting to settle or compromise the claim would not be within the terms of the agreement. Testimony of conduct inconsistent with claiming a known right or showing an intentional relinquishment of a known right is admissible on the issue of waiver whether it occurred before or after the execution of the non-waiver agreement, provided such conduct does not relate to the investigation of the claim. Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co., supra; Texas Farm Bureau Mutual Insurance Co. v. Carnes, 416 S.W.2d 863 (Tex.Civ.App.—Corpus Christi 1967, error ref., n. r. e.); Graham v. San Antonio Machine and Supply Corp., 418 S.W.2d 303 (Tex.Civ.App.—San Antonio 1967, error ref., n. r. e.); Alamo Casualty Co. v. Trafton, 231 S.W.2d 474 (Tex.Civ.App., San Antonio 1950).

The relevant portions of the Vandalism and Malicious Mischief Endorsement are as follows:

1. In consideration of $——— premium, and subject to the provisions of this policy and this endorsement, the liability of this Company hereunder for loss or damage resulting from the peril of Riot and Civil Commotion is hereby extended to include loss caused by damage to or destruction of the property described by Vandalism and Malicious Mischief, including damage to the building(s) covered hereunder caused by burglars.

2. The term "Vandalism and Malicious Mischief" as used herein is restricted to and includes only wilful or malicious physical injury to or destruction of the described property.

3. When this endorsement is attached to a policy covering direct loss to the described property, this company shall not be liable under this endorsement for any loss:

\* \* \* \* \* \*

(b) by pilferage, theft, burglary or larceny;

\* \* \* \* \* \*

Appellee claimed coverage under the last phrase of paragraph 1, while appellant contends that when the whole endorsement is read together, the loss falls within the exclusion of paragraph 3(b).

The construction of this Vandalism and Malicious Mischief Endorsement presents a question of first impression in Texas. The form, as prescribed by the State Board of Insurance, has apparently been in use at least since 1959, but no cases have been found in this jurisdiction which construe it. Three cases from other jurisdictions are cited in the briefs, two of which are immediately distinguishable. In Pacific Indemnity Company v. N. A. Inc., 120 Ga. App. 793, 172 S.E.2d 192 (1969), the court held there was no burglary, because the property stolen was copper flashing from

the roof, and there was consequently no entry. And in Theo v. National Union Fire Insurance Company, 99 Ga.App. 342, 109 S.E.2d 53 (1959), the language of the policy was substantially different. State Automobile Mutual Insurance Co. v. Trautwein, 414 S.W.2d 587 (Ky.App.1967), is a much closer case. The language of the policy is basically the same as that here, except it does not include the "damage to the building(s) * * * caused by burglars" phrase; and the exception clause, which includes all the elements in 3(b) of the policy before the Court here, also adds "* * * except by wilful and malicious physical injury to * * * a building * * *" The Kentucky court, citing the familiar rule of construction that exceptions are strictly construed, held that the theft of four permanently installed air conditioners from the walls of the building, was a loss covered by the policy. However, because of the differences in the phraseology of this policy from the policy presently before the court, the analysis of the Kentucky court would not be controlling on the question of coverage here.

█ The endorsement before the court is ambiguous. On the one hand, paragraph 1 appears to extend coverage to "damage to the building(s) covered hereunder caused by burglars." On the other hand, paragraph 3(b) appears to restrict or take away this coverage by denying loss "by * * * burglary * * *" Generally, a contract of insurance is to be construed as other contracts, and all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. United American Ins. Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160 (1960), quoted in American-Amicable Life Ins. Co. v. Lawson, 419 S.W.2d 823 (Tex.Sup.1967).

█ When the language of a policy is plain and unambiguous, the court will not construe it so as to make a contract embrace that which it was not intended to include. Royal Indemnity Co. v. Marshall,

388 S.W.2d 176 (Tex.Sup.1965). When the language is ambiguous so as to obscure the intent of the parties, or there is a conflict between the coverage extended and the exceptions to that coverage, "[i]t is a well settled rule in this state that policies of insurance will be interpreted and construed liberally in favor of the insured, and strictly against the insurer. It is also well settled that exceptions and words of limitation will be strictly construed against the insurer." Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, 381 (1951). The court said, in Missouri State Life Ins. Co. v. Carey, 276 S.W. 227 (Tex.Com.App.1925, judgment adopted), "* * * the well-known rules of construction applicable are that every provision of the policy must be given effect, if possible, and that if the same is ambiguous, or admits of a reasonable construction favorable to the insured, such construction will be adopted." Even stronger language is found in the opinion of Justice Garwood for the majority in Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953):

> Yet, the rule [special rule of construction for insurance policies], of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable.

█ One other test which has been used as a means of ascertaining the coverage contemplated by the parties is to look to other coverage that is available. Iowa Mutual Ins. Co. v. Faulkner, 157 Tex. 183, 300 S.W.2d 639 (1957). In this case, the court looked to other coverage available under the policy, and the fact that the insured had not opted for it was a strong indication that the coverage purchased was not intended to extend to the loss covered by the provision which was rejected. Similarly, in our case, there is some testimony

that appellee had not purchased "Burglary, Theft and Robbery" coverage, because it was prohibitively expensive. This would tend to indicate that burglary was not one of the risks insured. However, this then would serve to read out of the policy clear language that "damage * * * caused by burglars" is a risk which is covered. This argument is weakened since it does not appear from the record that "Burglary, Theft and Robbery" coverage includes *damage to the building* caused by burglars. Damage to an insured building caused by a burglar obviously is a risk affording less exposure than coverage of all loss caused by Burglary, Theft and Robbery. A court is not at liberty to revise an agreement while professing to construe it. General American Indemnity Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660 (1960).

Appellant has admitted that the electrical apparatus removed from the warehouse were a part of the building (fixtures); that the removal caused damage to the building, and that the damage was caused by burglars. In this case, the loss was caused by wilful physical injury to the building insured, in the language of the policy. It was caused by burglars. After this wilful physical injury to the building, the burglars carried off the electrical apparatus; but the injury covered by the policy was completed before the theft of the copper wiring and the transformers. The policy does not read, " * * * damage to the building(s) * * * caused by burglars *in gaining entry or exit*." Nor does it read loss "occasioned by" or "incident to" a burglary. In paragraph 1, the coverage under the policy is extended to *"damage* to the building(s)", while the restriction is limited to *"loss*: * * * by burglary * * *"* By reason of the endorsement the policy covers all of the loss sustained by appellee as the result of wilful physical injury to the insured building inflicted by the burglar or burglars on the occasion in question.

Since there is no evidence that appellant waived the filing of a sworn proof of loss, this case must be reversed. The case will be remanded by reason of the error of the trial court in refusing to admit evidence of waiver after the execution of the nonwaiver agreement.

The judgment is reversed and remanded.