**UNITED STATES FIDELITY AND GUARANTY COMPANY, Petitioner,**

**v.**

**BIMCO IRON AND METAL CORPORATION, Respondent.**

**No. B–2310.**

Supreme Court of Texas.

Feb. 24, 1971.

Rehearing Denied March 31, 1971.

**354**

---

Fulbright, Crooker, Freeman, Bates & Jaworski, Tom Connally, Houston, for petitioner.

Finger & Burg, Leonard Z. Finger, Houston, for respondent.

McGEE, Justice.

This is a suit to recover "damge to the building(s) * * * caused by burglars" under the vandalism and malicious mischief endorsement attached to a Texas Standard Policy of fire insurance. The trial court rendered judgment for plaintiff based on the jury verdict. The Court of Civil Appeals held that the cost of repair of the building to replace wiring, boxes and transformers was covered under the policy but reversed and remanded the cause on the issue of waiver of late filing of proof of loss. 455 S.W.2d 828. We affirm the judgment of the Court of Civil Appeals.

There is no dispute with reference to the facts giving rise to the question of policy coverage of this loss. During the weekend of July 10–13, 1966, burglars broke into the plaintiff's warehouse, dismantled the electrical system of the warehouse and removed the high voltage wiring and transformers. The defendant, in response to a request for admissions, has admitted "that by carrying away the wiring constituting the 440 volt wiring of the building, damage was done to the building by the burglars or vandals." It has been stipulated that the wiring and electrical apparatus were a part of the building at the time of the occurrence in question. The record also reflects that the burglars cut a lock and damaged a door in gaining entrance. No claim is being made for the loss of some tools, gauges and miscellaneous metals that were also stolen from the warehouse. This event was promptly reported to and investigated by the police.

Bimco paid the first installment of $490.-00 on the total premium of $1225.00 for a "Fire, Lightning and Extended Coverage" (windstorm, hurricane, hail, explosion, riot, civil commotion, etc.) policy of insurance having a three-year term commencing January 3, 1966. Attached to the policy was the vandalism and malicious mischief endorsement. The relevant portions of the vandalism and malicious mischief endorsement provide (emphasis ours):

"1. In consideration of $10.00 (Incl.) premium and subject to the provisions of this policy and this endorsement, the liability of this Company hereunder for loss or damage resulting from the peril

of Riot and Civil Commotion is hereby extended to include loss caused by damage to or destruction of the property described by Vandalism and Malicious Mischief, *including damage to the building(s) covered hereunder caused by burglars.*

"2. The term 'Vandalism and Malicious Mischief' as used herein is restricted to and includes only willful or malicious physical injury to or destruction of the described property.

"3. When this endorsement is attached to a policy covering direct loss to the described property, *this Company shall not be liable under this endorsement for any loss:*

\*   \*   \*   \*   \*   \*

"(b) by pilferage, theft, *burglary* or larceny.

\*   \*   \*   \*   \*   \*."

■ Plaintiff respondent claims coverage under the last phrase of paragraph 1. Defendant petitioner contends that this loss falls within the exclusion of paragraph 3b.

The construction of this vandalism and malicious mischief endorsement presents a question of first impression in Texas. Standing alone, the loss is unquestionably covered by the insuring clause of the endorsement (paragraph 1). The loss occurred when the burglars dismantled and destroyed the electrical system of the building which was a part of the realty. We know of no other form of policy that covers damage to buildings caused by burglars.

The defendant contends that even if the damage is caused by burglars, then a second question, whether the loss is one by pilferage, theft, burglary or larceny, must be answered in the negative before the loss is covered (paragraph 3b).

We refuse to give this endorsement such a strained construction. It would require this Court to give full effect to the exclusionary clause and to ignore the insuring clause. Paragraph 1 extends coverage to *"damage to the building(s) covered hereunder caused by burglars."* If paragraph 3b takes away this coverage by denying loss "by burglary," we then have an ambiguous contract, as found by the Court of Civil Appeals, which will be liberally construed in favor of the insured and strictly against the insurer. Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953); Providence Washington Insurance Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379 (1951); United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048 (1942); 32 Tex.Jur.2d Insurance § 59 at 119 (1962).

We interpret paragraph 3b to exclude personal property from coverage, i. e., the lot of tools, gauges, and miscellaneous metals that were stolen from the warehouse. This gives effect to paragraph 3b. This Court recognizes no ambiguity at all. We said the following in Continental Casualty Co. v. Warren, supra:

"But for the fact that insurance policies are governed by the special rule of construction, which is a familiar part of our jurisprudence, we might, indeed, hold either that the interpretation against liability of the insurer should prevail or that, the policy being ambiguous, there is a fact issue as to what was intended. Yet the rule, of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable. Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 179, 229 S.W.2d 605, 609."

In 5 Appleman, Insurance Law & Practice, § 3182.25 at 591 (1970), we find the following statement: "* * * under a policy insuring against vandalism and malicious mischief but generally excluding theft losses, recovery may be had for such

vandalism even though some of the property was stolen." The case cited by Appleman for the latter statement is State Automobile Mutual Insurance Company v. Trautwein, 414 S.W.2d 587 (Ky.1967). In that case, air conditioning units permanently mounted in wall openings in some apartments had been removed after the vandals or thieves had jimmied the doors to the apartments to gain entrance. It was agreed that the replacement value of the air conditioners was $648.00 and that other damage to the apartments amounted to $194.50. The trial court rendered judgment for plaintiff for the total amount. This judgment was affirmed on appeal. The sole question decided by the court was whether or not all or any of claimant's loss was covered by the vandalism and malicious mischief endorsement of his insurance policy. The language of the endorsement is quite similar to that involved in our case. Paragraph 1 does not contain the "damage to the building(s) * * * caused by burglars" phrase, but recites coverage is extended " * * * to include direct loss to the described property by Vandalism and Malicious Mischief." Added to the exception clause ( " * * * this Company shall not be liable under this endorsement for any loss * * * (b) by pilferage, theft, burglary or larceny. * * * " ) are the words "except loss by willful and malicious physical injury to or destruction of a building described and insured hereunder." The court observed that the latter provision must have been inserted for some purpose and concluded that the purpose was to recognize that injury to the building was covered, although occurring in connection with a burglary. See Annot., 23 A.L.R.3d 1259 (1969).

We find a similar holding in a per curiam opinion in Allstate Insurance Company v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla. App.1967). The plaintiff recovered for a loss when one or more persons broke into its laundry and damaged twelve washing machines which required the laundry owner to expend substantial sums for repairs. Defendant claimed that the loss was not covered by the policy because of the exception clause to the effect that the policy does not cover loss by theft or burglary. The court said (at page 599): "The evidence before the court was sufficient to establish without conflicting inferences that the plaintiff suffered a direct loss to its insured property through vandalism or malicious mischief, which loss is not excluded from coverage even though it may have occurred in the course of an actual or attempted theft or burglary."

We hold that by reason of the endorsement the policy covers all of the loss sustained by the insured as the result of willful "damage to the building(s) * * * caused by burglars," including all costs of material and labor necessary to repair the building.

Defendant also relies on the fact that plaintiff failed to timely file a proof of loss. Absent proof of the insurance company's waiver of the necessity for filing a proof of loss, the plaintiff could not recover. The trial court refused to admit certain testimony relating to waiver on the ground that it related to facts occurring after a non-waiver agreement had been executed. The Court of Civil Appeals held that the testimony admitted into evidence did not raise a fact issue as to whether the defendant waived the plaintiff's failure to file a proof, but remanded for a new trial on the ground that testimony developed on a bill of exception raised the issue. The non-waiver agreement provided in part "that any action taken by the Company * * * in investigating said accident shall not operate in any way as a waiver, or invalidate any of the conditions of said policy. * * * "

The plaintiff's bill of exceptions would have shown: that after the time for filing proofs had expired and the non-waiver agreement executed, Mr. Wilson of the General Adjustment Bureau (claim adjuster for defendant) told plaintiff's attorney that the insurance company would not pay the loss from theft but would pay for the

damage to the door caused by the breaking in of the burglars. In answer to a request for admission the defendant admitted that it told plaintiff that the damage to the door was covered by the policy but that the loss resulting from the removal of the wiring system was not; and the defendant's counsel made the following statement at the trial: "Your Honor, I think that is certainly what happened, I take the position right now that that is exactly what the policy says, that the door of the building is covered and the wire is not covered."

The total denial of liability on any grounds, after the time for filing the proof of loss had expired would not constitute a waiver of the defense of late filing of the proof of loss. Galveston County v. Hartford Fire Insurance Co., 231 S.W.2d 684 (Tex.Civ.App.1950, writ ref'd).

■ Mr. Wilson was authorized to adjust this particular loss and to waive notice and formal proofs of loss. Employers Mutual Cas. Co. of Des Moines, Iowa v. Nelson, 351 S.W.2d 278 (Tex.Civ.App.1961, rev'd on other grounds, 361 S.W.2d 704). "It is generally recognized that an adjuster, authorized to act in the premises, may waive formal proof of loss." 32 Tex.Jur. 2d Insurance § 385 at 598 (1962).

■ Waiver has been defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. Massachusetts Bond. & Insurance Co. v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.Sup.1967). An admission of partial liability for damage to the door after the time for filing proofs of loss had expired is inconsistent with an intention to rely on failure to timely file proofs of loss as a defense. This is not a case where the defendant, as in Galveston County v. Hartford Fire Insurance Co., supra, denied *any* liability after the time allotted for filing proofs of loss. After the time for filing proofs of loss had expired the local agent wrote to the defendant requesting that plaintiff's claim be processed. The recording agent then referred the claim to the General Adjustment Bureau for handling by Mr. Wilson, the adjuster. He never denied liability on the grounds of late filing of proofs of loss. Mr. Wilson had conferences with the insured and through him obtained estimates of the cost of repair of the building damage.

The non-waiver agreement in this case merely states that investigation of the accident will not operate as a waiver. The action of Wilson in attempting to settle the claim by payment of damage to the door is not, in our opinion, a part of the investigation. This conduct was inconsistent with the insurer's known defense of non-filing of proofs of loss. The trial court committed reversible error in excluding this testimony.

■ The instant case is one of waiver and does not involve estoppel. The time for filing proofs of loss had expired before the action of the insurer constituting an alleged waiver of this defense occurred. Although there is a conflict found in Texas decisions, we adopt the rule that a waiver may be effective *after* expiration of the time for performance of a condition has expired, if the condition which is asserted to have been waived is not a material part of the agreed equivalent of the obligor's promise and its *non-performance does not materially affect the value received by the obligor*. Equitable Life Assurance of the United States v. Ellis, 105 Tex. 526, 147 S.W. 1152 (1912), on rehearing 152 S.W. 625 (1913); Graham v. San Antonio Machine & Supply Corp., 418 S.W.2d 303 (Tex.Civ.App.1967, writ ref'd n. r. e.) Restatement of Contracts §§ 88(1), 297 (1932); 3A Corbin, Contracts, § 759 (1960); 14 Couch Insurance § 49.784 (2d ed.1965).

In *Ellis* we specifically held that waiver of a condition precedent to liability may be established by conduct occurring *after* the time for performance of the condition has expired. The distinction between waiver and estoppel in this situation is again noted in our Massachusetts Bond. & Insurance

Co. v. Orkin Exterminating Co. opinion, supra, to the effect (416 S.W.2d at page 401): "* * * that waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by consideration, nor is it essential that it be based upon an estoppel."

■ Waiver need not be founded on a new agreement, nor be supported by a consideration nor based on estoppel. To the extent that the following cases and others have held to the contrary and are in conflict with this opinion, they are overruled: Merchants' Mutual Insurance Co. v. Lacroix, 45 Tex. 158 (1876); Denton v. Ware, 228 S.W.2d 867 (Tex.Civ.App.1950, no writ); Ferguson v. Mounts, 281 S.W. 616 (Tex.Civ.App.1926, writ dism'd w. o. j.); Miller v. Deahl, 239 S.W. 679 (Tex.Civ. App.1922 writ ref'd); Hutchings v. Binford, 206 S.W. 557 (Tex.Civ.App.1918 no writ).

The judgment of the Court of Civil Appeals is affirmed.

STEAKLEY, Justice (concurring).

I concur in the disposition of the cause but disagree with the construction apparently given the insurance contract. I read the majority opinion to hold that Bimco was insured against the loss by theft of copper wiring and transformers not shown to have been damaged in the burglary. I see no ambiguity in the provisions of the policy with its Vandalism and Malicious Mischief Endorsement. Properly construed, the contract entitled Bimco to recover the cost of labor and materials required to restore the damage to the building itself; it did not entitle Bimco to recover for property lost by theft which, of course, was the purpose of the burglary. Only in this manner is full effect given both the insuring clause and the endorsement. The latter did no more than add very limited coverage of the same character commensurate with the minor premium of ten dollars.

In my view the majority has misconceived the nature of the insurance contract. It insured Bimco against direct loss to the specifically described warehouse building resulting from the listed perils of Fire and Lightning, Extended Coverage (Windstorm, Hurricane, Hail, Explosion, Riot, Civil Commotion, Smoke, Aircraft and Land Vehicles), Explosion, Vandalism and Malicious Mischief, and loss of Rents. The insurance contract did not purport to insure against loss resulting from the wrongful appropriation and theft of property, another distinct type of insurance carrying a corresponding premium charge. It insured direct loss to the building with the endorsement extending coverage to a similar type of loss. This was described as damage to or destruction of the building by acts of vandalism and malicious mischief, and by acts of burglars. That the latter covered peril, i. e., damage to the building caused by the acts of burglars, was limited in scope to damage directly to the building is made explicit. The endorsement says that when it is attached to a policy covering direct loss to the described property, as it was here, the Company shall not be liable for loss by pilferage, theft, burglary or larceny. This necessarily means that loss by theft was an excluded peril. The words of the endorsement, as well as the small premium charge, plainly reflect the intent of the parties to preserve the nature of the insurance contract as one insuring against direct loss to the building itself, and just as plainly the endorsement may not be construed beyond this clearly expressed intention so as to enlarge the coverage to include loss from theft. See Royal Indemnity Company v. Marshall, 388 S.W.2d 176 (Tex.Sup.1965) and British America Assur. Co. v. Miller, 91 Tex. 414, 44 S.W. 60, 39 L.R.A. 545 (1898).

The case is one of first impression in Texas, and as far as can be determined, elsewhere. Decisions in other jurisdictions

construing policies with different phraseology and characteristics are not in point, and, indeed, not particularly persuasive one way or the other. The majority cite State Automobile Mutual Ins. Co. v. Trautwein, 414 S.W.2d 587 (Ky.1967) as concluding "that the purpose was to recognize that injury to the building was covered, although occurring in connection with a burglary." This does not meet the issue at hand; neither does Allstate Ins. Co. v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla.App.1967).

CALVERT, C. J., and WALKER and REAVLEY, JJ., join in this concurring opinion.