**HURRICANE STEEL INDUSTRIES CO.,**
Appellant,

v.

**MAURICE PINCOFFS COMPANY,**
Appellee.

No. 459.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 17, 1971.

Bennett Lay, Kucera, Lay & Lang, Houston, for appellant.

William A. Harrison, Ross, Griggs & Harrison, Houston, for appellee.

TUNKS, Chief Justice.

In January, 1967, Hurricane Steel Industries Co., hereinafter called "Hurricane," ordered approximately 4,000 metric tons of steel wire rod from Maurice Pincoffs Company, hereinafter called "Pincoffs." The sale was by sample so that an express warranty that the goods should conform to the sample was created. Sec. 2.313, U.C.C., V.T.C.A. The rod was used in the manufacture of woven wire fence. The purchase price was $4.85 per hundred weight.

Soon after Hurricane began processing the rod, on April 26, 1967, it complained to Pincoffs that the rod was "substandard" and gave notice that it would assert a claim based upon such fact. On May 19 and 20 of 1967, representatives of the buyer and seller met and discussed the controversy as to the quality of the rod. Thereafter, on May 24, 1967, Guenther Reif, one of the representatives of Pincoffs, who had attended the meetings where the Hurricane claim was discussed, wrote Hurricane a letter reciting that "Just for the records I would like to repeat the details of the settlement reached * * *" at the meeting. It is Pincoff's contention that the "settlement reached" as shown by the language of that letter, limited Hurricane's remedy to the return of any goods claimed to be defective. Without necessarily agreeing that such construction of the letter is correct, we will accept it for the purposes of this opinion. Hurricane did not reply to Pincoffs' letter nor challenge the accuracy of its recitation as to the settlement agreement until July 25, 1967. On that date Hurricane wrote Pincoffs a letter including this language: "We never at any time agreed to take a certain amount or to handle our claim in any way except to start to accumulate the bad merchandise."

After the meetings above referred to, Hurricane rejected some of the rod and Pincoffs took it back and gave credit for its purchase price. Eventually all of the purchase price was paid except $17,388.59. When Hurricane declined to pay this final amount Pincoffs filed suit for it. In its petition Pincoffs alleged that a settlement agreement had been made and that the recovery sought was the amount due and

owing "under the terms of said agreement." Hurricane's answer included a sworn plea of failure of consideration for its agreement to pay the purchase price for the rod. Hurricane also filed a cross-action for damages based upon the alleged inferiority of the merchandise. After a trial before a jury the trial court, on Pincoffs' motion, withdrew the case from the jury and rendered judgment that Pincoffs recover the unpaid $17,388.59 and that Hurricane take nothing by its cross-action. Hurricane has appealed from that judgment.

In Hurricane's original brief its principal points related to the contention that the trial court erred in withdrawing the case from the jury because the evidence raised fact issues as to its plea of failure of consideration. There was much evidence to the effect that the rod delivered was of inferior quality. The appellee's brief for Pincoffs does not challenge Hurricane's contention that there was evidence that the merchandise was inferior. Rather, Pincoffs, in its brief, takes the position that its suit was based on the settlement agreement reflected by the language of its May 24, 1967 letter, that the evidence, as a matter of law, shows the making of that settlement agreement, and that its judgment was for the amount shown, as a matter of law, to be due under that agreement.

Pincoffs said position is based upon its contention of Sec. 2.201 of the Uniform Commercial Code. The relevant language of that Section is as follows:

"§ 2.201. Formal Requirements; Statute of Frauds

"(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(b) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received."

■ We do not agree with Pincoffs' contention that the quoted language of Sec. 2.201 makes its May 24, 1967 letter uncontrovertible proof that a settlement agreement was made in accordance with the language of that letter. It is true that Hurricane received the letter and did not answer it within ten days. But the letter did not purport to be "a contract for the sale of goods" or the confirmation of any such contract. It purported to be the confirmation of a settlement of a claim growing out of a sales contract. Subsection (b) of Section 2.201 in referring to a writing in confirmation of "the contract" which "satisfies the requirements of Subsection (a)" refers to "a contract for the sale of goods" as to which Subsection (a) requires a writing. The quoted statutory language has no bearing upon the effect of Pincoffs' letter of May 24, 1967.

Furthermore, even if the May 24 letter had been, or were construed to be, in confirmation of an oral contract for the sale of goods, Hurricane's failure to object to it in writing within ten days would not make Hurricane bound by its language. The only effect of Hurricane's failure timely to object in writing was to constitute the letter a compliance with the statute of frauds requirement of Subsection (a). Under such statute Hurricane's failure to object in writing in ten days did not preclude proof by Hurricane that such purportedly con-

firmed contract was not, in fact, made. In the comment following this statute, in Vernon's Texas Codes, Annotated, is this language:

"3. Between merchants, failure to answer a written confirmation of a contract within ten days of receipt is tantamount to a writing under subsection (2) and is sufficient against both parties under subsection (1). The only effect, however, is to take away from the party who fails to answer the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected. * * "

Cases from other states with holdings consistent with that language are: American Parts Co., Inc. v. American Arbitration Association, 8 Mich.App. 156, 154 N.W.2d 5 (1967); Tidewater Lumber Co., Inc. v. Maryland Lumber Co., 3 UCC Reporting Svc. 351, N.Y.Sup.Ct., May, 1966; Harry Rubin & Sons, Inc. v. Consolidated Pipe Co., 396 Pa. 506, 153 A.2d 472, 1959; Duralown Industries, Inc. v. Petal Sales Co., 4 UCC Reporting Svc. 736, N.Y.Sup.Ct.1967.

■ The evidence clearly raised a fact issue as to whether the oral settlement agreement allegedly confirmed by the May 24, 1967 letter was made. Mr. Raymond Schlindler, president of Hurricane, when asked if a final settlement agreement had been made, answered, "Absolutely not." Other of Hurricane's representatives who had attended the meetings where the controversy was discussed corroborated that testimony. One such representative, Mr. Ira Guidry, when asked if he had heard Mr. Schindler make such agreement, answered, "I did not." Mr. Travis McDonald, who attended the meetings as a representative of Hurricane, was asked, "Was there any final agreement about the settlement of the claim?" He answered, "No, sir, not at this time." Such testimony precludes a holding that the alleged settlement

agreement was, as a matter of law, established. It was therefore error to withdraw the case from the jury and render peremptory judgment.

The judgment of the trial cort is reversed and the case is remanded.