**Vacated and Dismissed in Part; Affirmed in Part; Reversed in Part; Remanded; and Opinion filed March 21, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00657-CV

---

### ALBERT ORTIZ, Appellant

### V.

### NATIONAL CITY HOME LOAN SERVICES, INC. D/B/A FIRST FRANKLIN LOAN SERVICES; PNC, N.A.; HARRIS COUNTY; HARRIS COUNTY DEPARTMENT OF EDUCATION; THE PORT OF HOUSTON AUTHORITY OF HARRIS COUNTY; THE HARRIS COUNTY FLOOD CONTROL DISTRICT; THE HARRIS COUNTY HOSPITAL DISTRICT; THE CITY OF HOUSTON; HOUSTON INDEPENDENT SCHOOL DISTRICT; HOUSTON COMMUNITY COLLEGE SYSTEM; AND PROPEL FINANCIAL SERVICES, LLC, Appellees

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-61178**

---

## O P I N I O N

Homeowner Albert Ortiz has been in litigation for over fifteen years now with the holder of the note on his property and with the loan servicer. The noteholder

foreclosed on the lien in 2006, but the foreclosure was determined to be void in 2008. Since then, the noteholder and loan servicer have asserted claims for breach of contract, declaratory judgment, and judicial foreclosure. Ortiz likewise asserted breach-of-contract claims, and he argues that the noteholder's representative executed two "Letter Agreements" in which the noteholder released, waived, or discharged Ortiz's obligations under the note and deed of trust, effectively giving him the property without any further payment.

In the first appeal in this case, we held that the Letter Agreements were ambiguous, such that their meaning was a question of fact to be resolved by the factfinder. On remand, the trial court issued an interlocutory order in favor of the holders of tax liens on the property and granted the noteholder's requests for declaratory relief. At trial, the trial court granted a directed verdict that the Letter Agreements are releases that fail for want of consideration, and the jury found in favor of the noteholder on the parties' respective breach-of-contract claims.

In this appeal, we hold that the claims of the tax lienholders are moot, so as to those parties, we vacate the judgment and dismiss the appeal. We affirm the portions of the judgment declaring that the 2006 foreclosure was void and conveyed no interest, and that, as the property's owner, Ortiz is responsible for the property's ad valorem taxes. We likewise affirm the take-nothing judgment as to Ortiz's breach-of-contract claim, because his complaints regarding that part of the judgment were not preserved for review. But we again hold that the Letter Agreements are ambiguous; thus, the trial court erred in granting the directed verdict. This error left unresolved questions concerning Ortiz's affirmative defense of waiver or discharge of the debt and the noteholder's counter-affirmative defenses of mutual or unilateral mistake.

We accordingly reverse the judgment as to the noteholder's claims for breach of contract, judicial foreclosure, and attorneys' fees. We remand the case with instructions as set forth herein.

## I. BACKGROUND

In March 2004, Albert Ortiz, the plaintiff below, purchased a house ("the Property"), and financed it by executing a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust"). When the prior appeal in this case was decided in 2013, National City Bank of Indiana was the owner and holder of the Note and the beneficiary of the Deed of Trust, but PNC, N.A., later succeeded to National City's interests. At trial, the parties continued to refer to the current noteholder as National City, and we do likewise. At all material times, National City Home Loan Services, Inc. d/b/a First Franklin Loan Services ("HLS") has been the mortgage servicer. We refer to National City/PNC and HLS collectively as "the Bank Parties."

### A. The Letter Agreements

Ortiz made no payments on the Note after August 2005, and the Property was posted for a foreclosure sale to take place on June 6, 2006. The morning of the sale, Ortiz filed suit to enjoin the sale, but the trial court denied his request for a temporary restraining order and National City purchased the Property.

Shortly thereafter, Ortiz's counsel asked an HLS employee to execute a proposed letter agreement the attorney had drafted. HLS employee Gary Stockey signed the agreement, which stated in pertinent part,

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A in connection with its foreclosure on the above-referenced property. As a result, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations

and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no further sums will be made or owed by Borrower, and no further sums will be demanded or litigated by Lender.

Two weeks later, Ortiz's counsel sent a proposed amendment to the letter agreement to Stockey, who signed and returned the letter as National City's authorized representative. The second letter stated,

> Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee.[1] The letter agreement did not specifically reference National City Bank of Indiana.
>
> Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006, letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

We refer to these two signed documents as "the Letter Agreements."

## B.    This Lawsuit

Two months after Stockey signed the second Letter Agreement, Ortiz filed this suit against the Bank Parties and others. As relevant to the issues presented here, he ultimately asserted that National City was liable to him for wrongful foreclosure and breach of the Deed of Trust. Ortiz also requested a declaratory judgment that (a) he owes no further debt whatsoever to National City under the Note, the Deed of

---

[1] In the first letter, Ortiz's counsel incorrectly identified HLS as the lender.

4

Trust, or otherwise, even if the trial court were to set aside the foreclosure sale; (b) through the Letter Agreements, National City waived or released its claims against Ortiz concerning his indebtedness under the Note and the Deed of Trust; and (c) the Letter Agreements do not fail for lack of consideration.

In response to Ortiz's allegations regarding the Letter Agreements, National City raised the affirmative defense that the purported agreements were unsupported by consideration. National City also asserted a counterclaim for breach of the Note, and in light of Ortiz's claim that the foreclosure was wrongful, National City sought judicial foreclosure of its lien on the Property. In addition, National City asked for declaratory judgment that if the foreclosure sale is void, then National City's deed-of-trust lien is valid, the debt is revived, and National City may proceed with a new foreclosure.

The trial court granted a partial summary judgment in Ortiz's favor as to his wrongful-foreclosure claim.[2] In 2008, the trial court set aside the substitute trustee's deed conveying title in the Property to National City and ordered title restored to Ortiz. Those rulings were never challenged.

In April 2009, the trial court granted Ortiz's motion for partial summary judgment on the Bank Parties' counterclaims concerning the Letter Agreements. In June 2010, the trial court ruled again on the same summary-judgment motion and on an additional summary-judgment motion concerning Ortiz's claims and affirmative defenses on the same subject. In the June 2010 ruling, the trial court stated "findings" that the Letter Agreements "lack consideration, and accordingly are not valid contracts to be enforced for all purposes" but they contain a "valid agreement to release/waive [Ortiz's] obligation on the Note." The trial court concluded that the

---

[2] The foreclosure was wrongful because the notices concerning acceleration of the debt had been sent to the wrong address.

5

Bank Parties were "to take nothing for any claim arising from the Note" but were "entitled to pursue claims as to the Deed of Trust."

Despite these rulings treating the effect of the Letter Agreements as a question of law, the trial court asked the jury to determine the Letter Agreements' meaning. The jury found that neither of the Bank Parties "validly agree[d] that [Ortiz] would receive ownership and possession of the [Property] without obligation for further payments on the Note and that [the Bank Parties] would not pursue any claims, lawsuits and/or obligations that they could have asserted against [Ortiz]." The trial court granted Ortiz's motion to disregard that finding and explicitly incorporated the interlocutory summary judgments into the final judgment. The trial court further declared that the "Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust," and that the 2006 deed "resulting from Defendants' wrongful foreclosure of the Property[] is set aside, rescinded, deemed null and void and of no effect." Both sides appealed the judgment. *See Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g) ("*Ortiz I*").

## C.    *Ortiz I*

On review, we held that the Letter Agreements were ambiguous in that they reasonably could be interpreted as "express[ing] an intent to release Ortiz from all claims related to the Property and to his indebtedness, or only an intent to release him from the indebtedness remaining after the sale of the Property." *Id.* at 878. We accordingly held that the trial court erred in granting summary judgment in Ortiz's favor on his argument that the Bank Parties waived or released their claims, and in incorporating the erroneous interlocutory rulings into the final judgment. *Id.* at 870. The trial court similarly erred in disregarding the jury's finding interpreting the

6

Letter Agreements. *Id.* at 883. We held, too, that the trial court erred in denying National City's claim for judicial foreclosure and in declaring that the Note and Deed of Trust are "fully, completely and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing." *Id.* at 870. We remanded the case with instructions to the trial court to "retry Ortiz's claim against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitations defense discussed [in *Ortiz I*], permitting the parties to assert defenses to these claims." *Id.* at 890. The Supreme Court of Texas denied Ortiz's petition for review.

**D. The Trial Court's "Limitation Order" and *Ortiz II***

On remand, Ortiz amended his pleadings to add claims, and the Bank Parties moved for summary judgment seeking dismissal of claims outside the scope of remand. On November 12, 2014, the trial court granted the motion. We refer to this ruling as the "Limitation Order," inasmuch as the trial court limited the claims to be tried as follows:

> [T]he only causes of action to be tried in the second trial of the above-captioned matter will be Ortiz's causes of action against National City for breach of contract and National City's claims against Ortiz for breach of contract and judicial foreclosure, and, with the exception of Ortiz's limitation's [sic] defense which was dismissed by the Court of Appeals, the parties are permitted to amend their pleadings solely to assert defenses to these claims.

We denied Ortiz's request for mandamus relief to compel the trial court to set aside the order. *In re Ortiz*, No. 14-14-00979-CV, 2015 WL 1021314, at *1 (Tex. App.—Houston [14th Dist.] Mar. 5, 2015, orig. proceeding) (per curiam) (mem. op.) ("*Ortiz II*").

## E. Tax Lienholders Added as Parties

The Bank Parties moved to add the holders of tax liens as parties on the ground that the lienholders were necessary to the adjudication of the Bank Parties' judicial-foreclosure claim. These lienholders ultimately included a number of governmental entities (collectively, "the Taxing Authorities")[3] and Propel Financial Services, LLC.

The trial court granted the motion to add these parties over Ortiz's objections. The newly added parties asserted cross-claims against Ortiz for delinquent taxes and foreclosure, then the Taxing Authorities and Propel successfully moved for summary judgment. The trial court held Ortiz liable to the Taxing Authorities for delinquent taxes; granted the Taxing Authorities and Propel judgment for foreclosure; and declared that the Taxing Authorities' liens have priority over any liens claimed by the Bank Parties or Propel. Finally, the trial court ordered the Property sold in execution of the judgment but noted that the order was interlocutory.

## F. Events Surrounding the Second Jury Trial

Prior to the second trial, the parties briefed questions of law to be submitted for the trial court's decision at the pre-trial conference. *See* TEX. R. CIV. P. 166(g). At the Bank Parties' request, the trial court issued an order declaring that the 2006 foreclosure was void from its inception and the trustee's deed from the foreclosure "conveyed no interest whatsoever." Ortiz also sought pretrial declarations, but the trial court did not rule on his requests at that time.

The second trial ended in a mistrial.

---

[3] The "Taxing Authorities" consist of Harris County, the Harris County Department of Education, the Port of Houston Authority of Harris County, the Harris County Flood Control District, the Harris County Hospital District, the City of Houston, Houston Independent School District, and Houston Community College System.

8

## G. The Third Jury Trial

Ortiz had asked the trial court for pre-trial rulings that National City (1) cannot recover against Ortiz for property taxes for tax years 2004–2005 due to limitations; (2) is responsible for property taxes for tax years 2006–2009, when it unconditionally paid the taxes; and (3) is responsible for property taxes for tax years 2010–2013 because the 2008 summary-judgment that declared the foreclosure wrongful was ineffective until the decision in *Ortiz I* was issued in May 2013. The trial court partially granted and partially denied Ortiz's requests, ruling that, although Ortiz has continuously owned the Property, the doctrine of unclean hands bars National City from seeking reimbursement or damages for property taxes for tax years 2006–2009. The trial court further declared that, as the owner of the Property, Ortiz is responsible for ad valorem taxes on the Property for subsequent years.

### 1. Directed Verdicts

Consistent with its pre-trial rulings, the trial court granted a directed verdict that, as a matter of law, the 2006 foreclosure was void ab initio and Ortiz has continuously owned the Property from the date he purchased it in 2004. But in addition to these rulings, the trial court also granted a directed verdict that the Letter Agreements are releases that fail for want of consideration and that Uniform Commercial Code section 3.604—under which a party can voluntarily renounce, without consideration, the right to payment of a promissory note—does not apply to the Letter Agreements.

### 2. Jury Verdict and Judgment

On Ortiz's and the Bank Parties' competing breach-of-contract claims, the jury found in favor only of National City, assessing damages of $1,083,456.83.

Although the jury assessed no attorneys' fees, the trial court granted National City's motion for judgment notwithstanding the verdict on that issue and awarded it nearly $1 million for trial attorneys' fees and awarding appellate attorneys' fees contingent only upon the stage of appeal reached and not on the success of the appeal. All of Ortiz's post-judgment motions were unsuccessful.

In addition to awarding these amounts and authorizing National City or its successors or assigns to judicially foreclose on the Property, the Modified Final Judgment also expressly incorporated (a) the interlocutory summary judgment in favor of the Taxing Authorities and Propel, (b) the order holding that the 2006 foreclosure was void and conveyed no interest, (c) the ruling that Ortiz is responsible for all ad valorem taxes on the Property from 2010 "to the present," and (d) those portions of the 2010 jury's verdict that were not challenged in *Ortiz I*.

Ortiz appeals the judgment.

## II. ISSUES PRESENTED

Ortiz presents five issues for review.[4] He first contends the trial court erred by adjudicating claims against him in violation of the trial court's Limitation Order prohibiting the pleading and trial of any matter other than the parties' breach-of-contract claims and National City's judicial-foreclosure claim. Second, Ortiz asserts that he established as a matter of law that National City breached its contract with him, and thus, the trial court erred in ruling that Ortiz take nothing on that claim. Third, Ortiz maintains that the trial court erred in granting a directed verdict on his defenses related to the Letter Agreements and in denying his post-judgment motion that National City take nothing on its claims based on its signing of the Letter

---

[4] We have reordered the issues for clarity.

10

Agreements. In his fourth and fifth issues, Ortiz challenges the award of trial and appellate attorneys' fees.

### III. SCOPE OF LITIGATION

Ortiz's first issue concerns the scope of the matters to be litigated on remand. In reversing the judgment in *Ortiz I* and remanding the case, we instructed the trial court to retry National City's judicial-foreclosure claim and National City's and Ortiz's breach-of-contract claims, and with the exception of a limitations defense eliminated in *Ortiz I*, permitting the parties to assert defenses to those claims. The trial court then issued its Limitation Order prohibiting the pleading and trial of other claims. In his first issue, Ortiz contends that the trial court erred by adjudicating claims against him in violation of that order, or stated differently, by exceeding this Court's judgment and mandate.

When the trial court's judgment has been reversed and the case remanded, "the trial court is authorized to take all actions that are necessary to give full effect to the appellate court's judgment and mandate." *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013). Although the appellate court's judgment and mandate do not limit the trial court's jurisdiction, they "limit the trial court's authority in exercising that jurisdiction." *Id.* Ortiz maintains that the trial court erred in (a) adjudicating the claims of the Taxing Authorities and Propel concerning their tax liens on the Property, (b) declaring the 2006 foreclosure void from its inception, and (c) declaring that Ortiz has owned the Property continuously since he purchased it in 2004 and is responsible for all ad valorem taxes for tax years 2010 onwards. After addressing the claims of the Taxing Authorities and Propel, we address the latter two contentions together.

11

## A. Judgment in Favor of the Taxing Authorities and Propel

After interlocutory summary judgment was rendered in favor of the Taxing Authorities and Propel regarding their tax liens on the Property, those amounts were paid by, and the tax liens were transferred to, other lenders. Because Ortiz's indebtedness to the Taxing Authorities and Propel had been eliminated, Ortiz moved to modify the judgment to eliminate those claims, but he was unsuccessful.

We do not address Ortiz's argument that, in adjudicating these claims, the trial court exceeded its own order restating this Court's judgment and mandate, because this part of the trial court's final judgment must be vacated for an even more fundamental reason: the trial court lacked jurisdiction to render judgment on the Taxing Authorities' and Propel's claims because the claims were moot. *See Tex. Dep't of Family & Protective Servs. v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022) (courts lack subject-matter jurisdiction to decide a moot controversy).

A case becomes moot when the court's action on the merits cannot affect the parties' rights or interests, as, for instance, when a justiciable controversy between the parties ceases to exist, or the parties no longer have a legally cognizable interest in the outcome. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). Although the entirety of the claims against Ortiz by the Taxing Authorities and Propel rested on his indebtedness to them for delinquent taxes and related charges for particular tax years, that debt was paid before the trial court rendered final judgment, thereby eliminating the live controversy between them. The trial court therefore lacked subject-matter jurisdiction to render final judgment as to those claims.[5]

---

[5] The Bank Parties argue that Ortiz has shown only that the debt and the tax liens securing them have now been assigned to others but has not shown that the underlying debt is no longer owed to *anyone*. This makes no difference to our jurisdictional analysis, which is concerned only with whether the claims of the parties to the judgment actually rendered are moot. The payment of

We accordingly vacate the judgment as to the Taxing Authorities and Propel and dismiss the appeal as to those parties. *See id.* Because the trial court lacked jurisdiction to render judgment for these parties after Ortiz's debt to them was paid, the question of whether the trial court exceeded this Court's mandate in doing so is likewise moot.

## B. The Effect of the Invalidity of the 2006 Foreclosure on Ownership of the Property and Responsibility for Ad Valorem Taxes

The trial court's judgment incorporated orders that the 2006 foreclosure was void from its inception; that the substitute trustee's deed from that foreclosure sale was likewise void from its inception and conveyed no interest; that Ortiz has owned the Property from the time that he purchased it in 2004; and that Ortiz is responsible for ad valorem taxes for tax years 2010 onwards. Ortiz argues that these matters (1) exceed the scope of this Court's mandate, (2) were not pleaded, (3) were not presented to the trial court, and (4) were decided without any evidence. We disagree with each of these contentions.

First, these matters were within the scope both of this Court's mandate and of the pleadings. The challenged orders merely gave full effect to our instructions to retry National City's claims for breach of contract and judicial foreclosure. This is so because the Property's Deed of Trust required Ortiz to "pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument," and with certain exceptions inapplicable here, to "promptly discharge any lien which has priority over this Security Instrument." These terms were never in dispute. The Bank Parties alleged in their live pleadings that there were "unpaid taxes" on the Property, but Ortiz maintained that an earlier

---

Ortiz's debt to the Taxing Authorities and Propel extinguished the live controversy between those parties and Ortiz, even if the debts were paid by—and are now owed to—a non-party lender.

13

summary judgment in this case holding that the 2006 foreclosure was wrongful was ineffective until we issued our opinion in *Ortiz I* on May 16, 2013, even though the wrongful-foreclosure ruling was not challenged in that appeal. Nevertheless, Ortiz reasoned that National City was the record titleholder under the wrongful foreclosure until May 16, 2013, and thus, Ortiz was not responsible for the Property's ad valorem taxes until tax year 2014. Thus, to determine whether Ortiz was in default for failure to pay ad valorem taxes, it was necessary to first determine who owned the Property and was responsible for ad valorem taxes in a given tax year. As framed by the parties, the answers to those questions depended on the resolution of a disputed question of law, namely, whether the wrongful foreclosure was void or merely voidable. The trial court was authorized by this Court's mandate and by the parties' pleadings to consider these matters.

Ortiz also is mistaken in asserting that these issues were not presented to the trial court. The wrongful nature of the 2006 foreclosure had ceased to be disputed long before this case was remanded after *Ortiz I*, and the legal effect of the wrongful foreclosure—and in turn, the wrongful foreclosure's effect on ownership of the Property and responsibility for ad valorem taxes—were submitted to the trial court via a pretrial conference. The trial court has discretion to consider via a pretrial conference such matters as the "identification of legal matters to be ruled on or decided by the court," "contested issues of law," and "[s]uch other matters as may aid in the disposition of the action." TEX. R. CIV. P. 166(g), (j), (p). The parties submitted pretrial briefs on these matters, and the trial court did not abuse its discretion in considering and ruling on the matters they addressed.

Finally, no evidence was necessary to resolve these matters because they involved no disputed questions of fact, for a wrongful foreclosure in violation of the terms of the deed of trust is void ab initio as a matter of law. *See Slaughter v. Qualls*,

14

139 Tex. 340, 346, 162 S.W.2d 671, 675 (1942). It is undisputed that the 2006 foreclosure violated the terms of the Deed of Trust, and the consequence of that violation is that the substitute trustee's deed from that foreclosure sale was void and conveyed no interest. As a result, Ortiz remained the Property's owner, and as the owner, Ortiz is responsible for the ad valorem taxes in the years at issue.

We accordingly overrule the remainder of Ortiz's first issue and affirm this part of the judgment.

## IV. JUDGMENT AGAINST ORTIZ ON HIS BREACH-OF-CONTRACT CLAIM

In response to Question 6 of the charge, the trial court asked the jury if the Bank Parties failed to comply with the terms of the Note or the Deed of Trust. The trial court instructed the jury that the failure to comply must be material and listed five circumstances to consider in determining materiality. The jury did not find that the Bank Parties materially failed to comply with the terms of the Note or Deed of Trust, and the trial court rendered judgment on this claim in accordance with the verdict. In Ortiz's second issue, he challenges this portion of the judgment. He argues that the trial court erred in (a) submitting Question 6 to the jury, and (b) rendering judgment dismissing his breach-of-contract claim with prejudice rather than ruling that National City's prior material breach bars it from recovering for Ortiz's breach of contract. These complaints, however, have not been preserved.

Ortiz was required to preserve his complaint of charge error by objecting to the inclusion of Question 6 in the charge. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (citing TEX. R. CIV. P. 274 and TEX. R. APP. P. 33.1(a)(1)). The sole objection to Question 6 was made by the Bank Parties, who argued that it should not be submitted because Ortiz had already breached the contract by failing to make his mortgage payments before any of the events described Question 6 occurred. The trial court overruled the Bank Parties' objection.

15

As for Ortiz's remaining arguments, Ortiz did not ask the trial court to disregard the jury's answer to Question 6, and none of the arguments he raises on appeal about this part of the judgment were raised in his combined motion to modify the judgment and motion for new trial, which were instead concerned with the Letter Agreements and with attorneys' fees. Thus, none of the arguments raised in Ortiz's second issue have been preserved for our review. We accordingly overrule this issue and affirm the portion of the judgment denying Ortiz relief on his breach-of-contract claim.

## V. RULINGS REGARDING ORTIZ'S DEFENSES RELATED TO THE LETTER AGREEMENTS

In his third issue, Ortiz contends that the trial court erred in granting National City's motion for directed verdict on Ortiz's defenses related to the Letter Agreements and by denying Ortiz's motion to modify the judgment so as to disregard the jury's findings that Ortiz owes National City $1,083,456.83 under the Note. We agree that the trial court erred in granting the Bank Parties' motion for directed verdict in treating the Letter Agreements as wholly unenforceable as a matter of law. We do not agree, however, that Ortiz established a right to judgment notwithstanding the verdict. As we pointed out in *Ortiz I*, the Letter Agreements are ambiguous,[6] and thus, remand and not rendition is the appropriate remedy.

### A. Standard of Review

We review a trial court's grant of directed verdict de novo by applying the same well-established legal-sufficiency standard under which we review no-evidence summary judgments. *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022). We consider the evidence in a light favorable to the party against whom the directed verdict was rendered, crediting all reasonable inferences and

---

[6] *Ortiz I*, 401 S.W.3d at 878.

disregarding evidence and inferences to the contrary if a reasonable jury could. *Id.* Our review is not limited to the grounds identified by the trial court as the basis for the directed verdict. *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 387 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We analyze the denial of a motion for judgment notwithstanding the verdict under this same legal-sufficiency standard of review.[7] *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

## B.     Clarifying the Law of the Case

Because the Bank Parties' motion for directed verdict and their response to Ortiz's motion for judgment notwithstanding the verdict relied heavily on our decision in *Ortiz I*, we begin by clarifying what was, and what was not, decided in *Ortiz I* regarding the Letter Agreements.

### 1.     *The Ambiguous Letter Agreements Present Fact Questions for a Jury to Resolve.*[8]

Leaving aside the somewhat convoluted procedural history, the primary dispute in *Ortiz I* was whether the Letter Agreements (1) are releases or waivers under Uniform Commercial Code (UCC) section 3.604, for which no consideration

---

[7] Although the motion was styled, "Plaintiff's Motion to Modify Judgment and Motion for New Trial," the modification sought was, in effect, a judgment notwithstanding the verdict.

[8] For the purpose of this appeal, we assume, without deciding, that this issue would survive to reach a jury on remand. We add this clarifying caveat, because as discussed further *infra*, the Bank Parties contend that the evidence conclusively establishes their counter-affirmative defense of mistake. They have not shown on appeal that this is so, but we do not foreclose the possibility that they could prove mistake as a matter of law on remand and that the trial court could order the Letter Agreements rescinded without the need for the jury to construe the documents. *See, e.g.*, *Bolle, Inc. v. Am. Greetings Corp.*, 109 S.W.3d 827, 833 (Tex. App.—Dallas 2003, pet. denied) ("When a party alleges mutual mistake, the court should not interpret the language contained in the contract but should determine whether the contract itself is valid." (citing *Williams v. Glash*, 789 S.W.2d 261, 264–65 (Tex. 1990))).

is required; (2) are common-law releases that fail for lack of consideration; or (3) are common-law waivers requiring no consideration.[9]

Ortiz moved for partial summary judgment on the ground that the Letter Agreements were common-law waivers of National City's claims for breach of contract and foreclosure. National City responded that the Letter Agreements are releases that fail for consideration. At the summary-judgment hearing, Ortiz argued that the Letter Agreements are waivers under UCC section 3.604, which states, "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . by agreeing not to sue or otherwise renouncing rights against the party by a signed record." TEX. BUS. & COM. CODE § 3.604(a)(2). This provision applies only to negotiable instruments such as promissory notes, not to non-negotiable instruments such as deeds of trust. *See id.* §§ 3.103(b), 3.104(b).

Apparently agreeing both with National City's summary-judgment response and with Ortiz's argument from the summary-judgment hearing, the trial court ruled that, although the Letter Agreements "lack consideration, and accordingly are not valid contracts to be enforced for all purposes," they nevertheless contain a "valid agreement to release/waive [Ortiz's] obligation on the Note" under section 3.604.[10]

We began our analysis in *Ortiz I* with the grounds on which the trial court ruled. Regarding the UCC, we held that we could not consider whether section 3.604 supported the trial court's summary-judgment ruling because that ground had not

---

[9] *Compare U.S. Fire Ins. Co. v. Republic Nat'l Life Ins. Co.*, 602 S.W.2d 527, 529–30 (Tex. 1980) (releases require consideration) *with U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 358 (Tex. 1971) (waivers do not require consideration).

[10] *See Ortiz I*, 401 S.W.3d at 875.

been raised in the summary-judgment motion, response, or reply.[11] Regarding National City's argument that the Letter Agreements are releases, we agreed that Ortiz asked the trial court to treat the Letter Agreements as releases of pending claims,[12] and that as common-law releases, the Letter Agreements failed for lack of consideration.[13]

But we then went on to consider whether the judgment in Ortiz's favor could be affirmed on the grounds Ortiz expressly raised in his summary-judgment motion[14]—which included his argument that the Letter Agreements are express waivers for which no consideration is required under the common law.[15] We pointed out that the parties disputed "whether the Letter Agreements unambiguously expressed an intent to waive or release all of the Bank's claims, or conversely, whether there was a question of fact about the Bank's intent."[16] We concluded that the Letter Agreements are ambiguous, so that their construction raised a question of fact to be decided by the jury.[17] Indeed, the lengthiest section of our opinion in *Ortiz I* is the analysis of whether there is more than one reasonable interpretation of the

---

[11] *See id.* at 876; *see also* TEX. R. CIV. P. 166a(c).

[12] *See Ortiz I*, 401 S.W.3d at 876 ("Although Ortiz characterized the Letter Agreements as express waivers for which no consideration was required, the parties were already in litigation with one another; thus, Ortiz was asking the trial court, in effect, to treat the Letter Agreements as releases.").

[13] *See id.* at 877 ("Ortiz then would be not entitled to summary judgment based on the common law because there was no consideration for the release.").

[14] *See id.* at 878.

[15] *See id.* at 874 (Ortiz's summary-judgment grounds included express waiver requiring no consideration).

[16] *Id.* at 878 n.5.

[17] *See id.* at 882 ("The court concluded [in *Burton v. National Bank of Commerce of Dallas*, 679 S.W.2d 115 (Tex. App.—Dallas 1984, no writ)] that determining the bank's intent was a question of fact to be resolved by the jury. *We reach the same result here.*") (emphasis added).

19

Letter Agreements.[18] This would have been unnecessary if, as the Bank Parties argued on remand, we had held as a matter of law that the Letter Agreements must be characterized exclusively as releases, making the absence of consideration fatal to Ortiz's defense.[19] We held then, and continue to hold, that the Letter Agreements are ambiguous, and that the parties' intentions present questions of fact for the jury to resolve.

## 2. *An Ambiguous Document Can Be a Waiver.*

The Bank Parties argue that if the Letter Agreements are ambiguous, then they cannot be waivers. The Bank Parties acknowledge that contracts, including contractual releases, can be ambiguous, but they point out that a "waiver is essentially unilateral in its character" and "need not be founded on a new agreement." *See U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 358 (Tex. 1971). From this, the Bank Parties reason that our holding that the Letter Agreements are ambiguous must mean that the Letter Agreements are contracts, and because they are contracts, the Letter Agreements must be releases (for which consideration is required under the common law) and not waivers (for which no consideration is required).

This argument is based on two unexpressed assumptions: first, that because a party can waive a right without a contract, a party cannot waive a right within a contract, and second, that because contracts can be ambiguous, an ambiguous writing must be a contract. These are mere logical fallacies. Waivers can exist

---

[18] *See id.* at 878–81.

[19] Waivers and releases are not mutually exclusive; a single document can do both. *See, e.g.*, *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 282–83 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (op. on reh'g) (guaranty released existing claims and waived future rights and defenses).

outside of contracts, but they also exist within contracts;[20] ambiguity can be found within a contract, but it also can be found outside of a contract.[21] The Bank Parties' conclusion that an ambiguous contractual provision cannot be a waiver is likewise insupportable: a contractual waiver—like other contractual provisions and other waivers[22]—can be ambiguous. *See, e.g.*, *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 699–700 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding contractual waiver-of-subrogation clause ambiguous). Regardless of whether the Letter Agreements are contracts, they purport to release or waive demands and claims, but for all the reasons stated in *Ortiz I*, there is more than one reasonable interpretation of what was intended to be released or waived. *Ortiz I*, 401 S.W.3d at 878–81. The Letter Agreements are therefore ambiguous, and the ambiguity must be resolved by the factfinder.

We accordingly hold that the trial court erred in granting directed verdict on the ground that the Letter Agreements are solely common-law releases requiring consideration. The common-law waivers in the Letter Agreements require no consideration, but it remains for the jury to determine what, under the circumstances, was intended to be waived.

---

[20] Even constitutional rights can be contractually waived. *See, e.g.*, *Dillee v. Sisters of Charity of Incarnate Word Health Care Sys., Houston, Tex.*, 912 S.W.2d 307, 309 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citing *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 187, 92 S. Ct. 775, 783, 31 L. Ed. 2d 124 (1972)).

[21] *See, e.g.*, *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 433 (Tex. 2011) (statute can be ambiguous); *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) (judgment can be ambiguous).

[22] *See, e.g.*, *Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015) (waiver of a previously preserved objection can be ambiguous).

### 3. UCC Section 3.604 Was Neither Held Nor Shown to be Inapplicable as a Matter of Law.

The trial court also granted a directed verdict that UCC section 3.604 does not apply to the Letter Agreements. The ruling seems to have been made in the mistaken belief that the statute's inapplicability was established in *Ortiz I*. But in that appeal, we pointed out, first, that arguments about section 3.604 had not been raised in the summary-judgment motion, response, or reply; and second, that the statute's applicability could not be determined because the Letter Agreements are ambiguous. *Ortiz I*, 401 S.W.3d at 882–83. Although the statute has now been properly raised, the Letter Agreements' ambiguity remains a barrier to determining whether the statute applies. To know whether the statute applies to the Letter Agreements, we first must know what the Letter Agreements mean. For example, if the jury were to determine that the Letter Agreements were intended to do no more than to renounce National City's right to pursue a deficiency judgment for the balance remaining after the 2006 foreclosure, then section 3.604 would apply and the Letter Agreements would not fail for lack of consideration, regardless of whether they might be successfully challenged on other grounds. Because there was more than a scintilla of evidence on which the jury could have made such a finding, the trial court erred in granting a directed verdict that, as a matter of law, section 3.604 is inapplicable.[23]

Alternatively, the Bank Parties assert that UCC section 3.604 does not apply to agreements "whose predominant purpose is the settlement of claims." The Bank

---

[23] Because the Bank Parties have raised the counter-affirmative defense of mistake, it should be noted that a UCC "discharge must be made intentionally and not as a result of mistake." *Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 653 (Tex. App.—Houston [14th Dist.] 1981, no writ) (construing statute under its prior codification as section 3.605)). We therefore repeat our earlier caveat: we do not foreclose the possibility that the Bank Parties could prove mistake and defeat Ortiz's common-law and statutory waiver or discharge arguments, potentially eliminating the need for the jury to construe the Letter Agreements (if conclusively established before reaching the jury) or rendering the jury's construction of the Letter Agreements immaterial.

Parties do not cite, and we have not found, authority supporting this argument. The Bank Parties instead rely on cases in which the authoring court held that settlement agreements are not governed by UCC Chapter 2, known as the "Uniform Commercial Code—Sales," because Chapter 2 "applies to transactions in goods" and a settlement agreement is not a contract for the sale of goods. *See* TEX. BUS. & COM. CODE §§ 2.101, 2.102. Section 3.604, in contrast, is not found in Chapter 2 of the UCC, but in Chapter 3. Whereas Chapter 2 applies to the sale of goods, Chapter 3, known as the "Uniform Commercial Code—Negotiable Instruments," applies, as the title suggests, to negotiable instruments. *Id.* §§ 3.101, 3.102(a). And by its unambiguous terms, section 3.604 applies to the renunciation of the right to sue for payment of a negotiable instrument. The authorities on which the Bank Parties rely are therefore inapposite.[24]

## C.    The Bank Parties' Defenses of Mutual or Unilateral Mistake

The Bank Parties suggest that, even if the trial court erred in granting a directed verdict eliminating Ortiz's affirmative defenses based on the Letter Agreements, the judgment nevertheless can be affirmed on the ground that the evidence conclusively established that the Bank Parties' execution of the Letter

---

[24] *See, e.g.*, *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1183 (5th Cir. 1993) (rejecting the application of a provision of UCC Chapter 2 "[b]ecause the agreement, on its face, is limited to a payment schedule for overdue invoices, and more closely resembles a settlement agreement, as opposed to a sale of goods"); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 715 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ("We do not construe the settlement agreement to be a modification, as contemplated by the Code, of a contract for the sale of goods."); *Hurricane Steel Indus. Co. v. Maurice Pincoffs Co.*, 464 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1971, no writ) (holding provision from UCC Chapter 2 inapplicable to the confirmation of a settlement agreement, which was neither a contract for the sale of goods nor the confirmation of such a contract).

Agreements was premised on a mutual or unilateral mistake of underlying fact[25] or of the parties' antecedent legal rights.[26]

There are at least three categories of mistake that can support rescission. These are mutual mistake, unilateral mistake, and a theory between these two that we have referred to as "mistake-plus-knowledge,"[27] that is, "[u]nilateral mistake by one party, and knowledge of that mistake by the other party." *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). The elements of these three theories differ from one another, and although the Bank Parties' brief can be construed as broadly alluding to each of them, the Bank Parties do not mention all of the elements of any one of these mistake theories, much less identify the evidence that they contend conclusively proves each element. Because the evidence they have discussed does not conclusively establish every element of any one of their mistake theories, we do not find this argument persuasive.

## VI. CONCLUSION

The trial court's erroneous grant of a directed verdict prevented the jury from considering Ortiz's affirmative defense of waiver and National City's counter-

---

[25] *See Williams*, 789 S.W.2d at 264 ("Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided."); *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988) ("Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake."); *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 620, 335 S.W.2d 371, 372–73 (1960) (listing elements that must be proved for equitable remedy of rescission based on unilateral mistake).

[26] *Compare Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 265–66 (Tex. App.—Dallas 2014, pet. denied) (mutual mistake about general law does not support rescission) *with 1st Coppell Bank v. Smith*, 742 S.W.2d 454, 462–63 (Tex. App.—Dallas 1987, no writ) (mutual mistake as to the antecedent legal rights of the parties supports rescission), *disapproved on other grounds*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 678 (Tex. 2000).

[27] *Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P.*, 465 S.W.3d 673, 686 n.2 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

affirmative defenses, such as mistake.[28] An affirmative defense is "a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings." *Hassell Constr. Co.. v. Stature Commercial Co.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (quoting *Bracton Corp. v. Evans Constr. Co.*, 784 S.W.2d 708, 710 (Tex. App.—Houston [14th Dist.] 1990, no writ)). "An affirmative defense allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail; it does not rebut the factual proposition of the plaintiff's pleading." *Id.* (citing *Heggy v. Am. Trading Emp. Ret. Account Plan*, 123 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Consequently, affirmative defenses generally are separable without unfairness from the underlying claim. *See, e.g.*, *Zarate v. Rodriguez*, 542 S.W.3d 26, 42 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (addressing affirmative defenses generally and waiver specifically); *see also A.L.G. Enters., Inc. v. Huffman*, 672 S.W.2d 230, 230–31 (Tex. 1984) (per curiam) (limiting remand to relitigation of mutual mistake).

Because waiver would be an independent reason why National City should not prevail despite the jury's findings in National City's favor, we conclude that Ortiz's affirmative defenses concerning the Letter Agreements, and National City's counter-affirmative defenses, can be fairly addressed in a separate trial without disturbing the jury's findings in National City's favor on liability and damages. *See* TEX. R. APP. P. 44.1(b) ("If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment

---

[28] *See* TEX. R. CIV. P. 94; *see also In re A.B.*, 458 S.W.3d 207, 210 (Tex. App.—Dallas 2015, pet. denied) (mutual mistake is an affirmative defense); *Kendziorski v. Saunders*, 191 S.W.3d 395, 406 (Tex. App.—Austin 2006, no pet.) (unilateral mistake is an affirmative defense); *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (waiver is an affirmative defense).

must be reversed and a new trial ordered only as to the part affected by the error."). Moreover, the trial court had awarded National City attorneys' fees pursuant to chapter 38 of the Texas Civil Practice and Remedies Code as the prevailing party in its breach-of-contract claim, and the outcome on remand may impact the Bank Parties' entitlement to, and amount of, attorneys' fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Thus, without considering Ortiz's remaining issues, we reverse the trial court's award of attorney's fees and include National City's request for such an award within the scope of remand. *See Zarate*, 542 S.W.3d at 42.

The net result is that if the jury agrees with Ortiz's contention that the parties intended the Letter Agreements to waive unconditionally all of Ortiz's obligations and all of the Bank Parties' rights under the Note and the Deed of Trust, then Ortiz's waiver defense succeeds, and the Bank Parties can neither foreclose nor recover damages and attorneys' fees. But if, for example, the jury does not agree that this was the parties' intent, or it is determined that the Letter Agreements were the result of a mistake entitling the Bank Parties to rescission, then National City is entitled to recover the breach-of-contract damages already assessed by the jury, to recover attorneys' fees as determined on remand, and to foreclose on the Property.[29]

In sum,

1.    we vacate as moot the portion of the judgment in favor of the Taxing Authorities and Propel, and we dismiss the appeal as to them;

---

[29] In *Ortiz I*, we had remanded the breach-of-contract claims of both Ortiz and National City. Because Ortiz's breach-of-contract claim has now "been fairly litigated and determined," we exclude it from the scope of remand. *See, e.g.*, *A.L.G. Enters., Inc.*, 672 S.W.2d at 230–31 (in suit to collect on a promissory note and judicially foreclose, court excluded from remand the property purchaser's counterclaims, "which ha[d] been fairly litigated and determined").

26

2.	we affirm the declaratory portions of the judgment determining, as a matter of law, that

(a)	the 2006 foreclosure was void ab initio and conveyed no interest;

(b)	Ortiz was the Property's owner from March 18, 2004, through the date of the trial court's order of January 30, 2017; and

(c)	as the Property's owner, Ortiz is responsible for all ad valorem taxes on the Property for tax years 2010 and thereafter;

3.	we affirm the portion of the judgment denying Ortiz any relief on his breach-of-contract claim;

4.	we reverse the judgment in National City's favor on its claims for breach of contract, judicial foreclosure, and attorneys' fees, but leave intact the jury's findings in favor of National City, including the finding that Ortiz owes National City $1,083,456.83 under the Note;

5.	we remand the case to the trial court with instructions to

(a)	relitigate Ortiz's affirmative defenses, and National City's counter-affirmative defenses, concerning the Letter Agreements, and to the extent necessary to finally resolve the remanded claims, defenses, and counter-defenses, allowing the factfinder to resolve any ambiguities as to the parties' intentions and to determine any questions of fact supported by the evidence;

(b)	relitigate the Bank Parties' request for attorneys' fees; and

(c)	render final judgment.[30]

---

[30] We leave intact the portion of the 2010 judgment that was not challenged in *Ortiz I*, and which has continued to be carried forward with the case for incorporation in the final judgment.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.